UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANKLIN ALBERTO SANCHEZ HENAO,<br><br>               Petitioner,<br><br>      v.<br><br>JULIO HERNANDEZ et al.,<br><br>               Respondents. | CASE NO. 2:26-cv-00707-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Franklin Alberto Sanchez Henao's petition for writ of habeas corpus. Dkt. No. 1. For the reasons stated below, the Court grants in part and denies in part the petition.[1]

## I.    BACKGROUND

Sanchez is a 51-year-old native of Colombia who came to the United States to seek asylum with his wife and son in October of 2023. Dkt. No. 1 at 2. He was briefly detained by the Department of Homeland Security ("DHS") after entering the United States and was "released on [his] own recognizance[.]" Dkt. No. 7-1 at 4; *see also* Dkt. No. 7-4 at 2. His Order for Release on Recognizance ("OREC") was issued on October 27, 2023 "[i]n accordance with section 236 of the

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

Immigration and Nationality Act" ("INA"). Dkt. No. 7-5 at 2. He was placed into the Alternatives to Detention ("ATD") program in Yakima, Washington. Dkt. No. 7-6 at 4. Sanchez was also issued a Notice to Appear ("NTA") which listed him as a noncitizen "present in the United States who has not been admitted or paroled"—as opposed to an arriving noncitizen—and stated that he was "subject to removal from the United States pursuant to . . . [section] 212(a)(6)(A)(i) of the [INA][.]" Dkt. No. 7-3 at 2.

Sanchez was instructed to report to the Yakima, Washington Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations office on January 23, 2026. Dkt. No. 8 at 3. When Sanchez did so, he was placed into custody "due to violating the terms of his release on recognizance." Dkt. No. 7-6 at 3–4. A warrant for his arrest was issued, Dkt. No. 7-7, and an immigration officer canceled his OREC on the same day because he "failed to comply with the conditions of release," Dkt. No. 7-8 at 2.

DHS records state that Sanchez committed ATD violations on April 29, 2025; July 22, 2025; and August 5, 2025. Dkt. No. 7-6 at 5. The declaration of Deportation Officer Sheldon Benjamin states that Sanchez also had an ATD violation on October 29, 2024, Dkt. No. 8 at 2, but that is not reflected in the accompanying DHS records, Dkt. No. 7-6 at 5, and Respondents[2] state that "ICE inadvertently overlooked one of the ATD violations when the database was reviewed," Dkt. No. 6 at 3 n.3. The record does not clearly indicate how Sanchez violated his ATD terms, though Respondents aver that he violated "reporting requirements[.]" *Id.* at 3 (citing Dkt. No. 8 at 2 ¶ 8, which states that the officer "reviewed Petitioner's violations, which reflect that Petitioner

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

had ATD violations on October 29, 2024, April 29, 2025, July 22, 2025, and August 05, 2025"); *see also* Dkt. No. 8 at 3 (Benjamin Declaration stating "[a] Spanish speaker explained to Petitioner that he was being placed into custody due to having multiple ATD violations while on the SmartLink program" and "Petitioner never offered an explanation as to why he missed his SmartLink appointments"; the declaration does not provide the Court with any other information about the alleged ATD violations or "SmartLink appointments").

Sanchez avers that before he was re-detained on January 23, 2026, "Respondents did not provide [him] with any written notice explaining the basis for detention" and "Respondents did not provide a hearing before a neutral decisionmaker where ICE was required to justify the basis for re-detention or explain why Mr. Sanchez is a flight risk or danger to the community." Dkt. No. 1 at 2–3.

On February 27, 2026, Sanchez appeared before an Immigration Judge ("IJ") for a final hearing on the merits of his applications for relief from removal. Dkt. No. 8 at 3. The IJ "denied all relief and ordered [Sanchez] removed to Colombia." *Id.* Sanchez timely filed an appeal of the IJ's decision with the Board of Immigration Appeals ("BIA"), which "remains pending at this time, and as such [Sanchez] is not yet removable to Colombia." *Id.*

On March 1, 2026, Sanchez filed his petition for a writ of habeas corpus. Dkt. No. 1. Respondents filed a return, Dkt. No. 6, and Sanchez filed a traverse, Dkt. No. 9.

## II.    DISCUSSION

Sanchez asserts that Respondents violated his right to procedural due process under the Fifth Amendment based on the procedural deficiencies described above. Dkt. No. 1 at 6–10. He seeks immediate release as well as an order (1) "permanently enjoining his re-detention during the pendency of his removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [he] is a flight risk or a

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

danger to the community and that no alternatives to detention would mitigate those risks" and (2) declaring that his "re-detention while removal proceedings are ongoing without first providing an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment[.]" Dkt. No. 1 at 10–11. He also seeks attorney's fees and costs. *Id.* at 12.

**A.    Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful,

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 4

unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

## B.     Sanchez Has Established a Due Process Violation

Like many petitions before the Court, Sanchez's petition ignores the statute to which he is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies. *See* Dkt. No. 1 at 7–10; *see also* Dkt. No. 9 at 2. But the Ninth Circuit has rejected such a proposition, and this Court does too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Id.*; *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

1.     Process Required by Statute

(a)     8 U.S.C. § 1226(a) is the Applicable Statutory Authority

Respondents aver that Sanchez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) because he is an applicant for admission. Dkt. No. 6 at 3–4 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. Feb. 6, 2026)). 8 U.S.C. § 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," *id.* § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

Respondents acknowledge that courts in this District have rejected their argument that noncitizens in Sanchez's position are detained pursuant to Section 1225(b). Dkt. No. 6 at 5. As stated in *Balwan v. Bondi*, No. 2:26-cv-00248-LK, 2026 WL 497098, at *4 (W.D. Wash. Feb. 23, 2026), this Court agrees with the reasoning of *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. Sept. 30, 2025) and countless other courts across the country: "The plain text of section 1226(a)" implies that the "default discretionary bond procedures in section 1226(a)"— rather than mandatory detention procedures under 8 U.S.C. § 1225(b)—apply to noncitizens who are "'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but have not been implicated in any crimes as set forth in section 1226(c)." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1322–23. "[I]f the Court were to adopt the reading of section 1225 advanced

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 6

by the [Respondents], it would render significant portions of section 1226(c) meaningless," including the recently enacted Laken Riley Act, which "carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority." *Id.* at 1324–25. Furthermore, had Congress wanted Section 1225(b) to have the effect urged by the government, "it could have said so in words far simpler than those that it wrote." *Buenrostro-Mendez,* 166 F.4th at 511 (Douglas, J., dissenting (quoting *Biden v. Texas*, 597 U.S. 785, 798 (2022)).

Additionally, "where a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)). The government has treated Sanchez as subject to discretionary detention under 8 U.S.C. § 1226 from his arrival in the United States until his January 23, 2026 detention. Specifically, after Sanchez entered the United States in December 2022, he was released on an OREC pursuant to "section 236 of the Immigration and Nationality Act," Dkt. No. 7-5 at 2, which is codified at 8 U.S.C. § 1226, *see Diouf v. Mukasey*, 542 F.3d 1222, 1227 (9th Cir. 2008). Furthermore, as discussed above, unlike noncitizens detained under 8 U.S.C. § 1226(a), noncitizens detained under 8 U.S.C. § 1225(b) are subject to mandatory detention unless they are temporarily paroled into the United States "for urgent humanitarian reasons or significant public benefit[.]" *Jennings*, 583 U.S. at 283 (quoting 8 U.S.C. § 1182(d)(5)(A)). Nothing in the record suggests that Sanchez's release in 2023 was pursuant to Section 1225(b). Indeed, as discussed above, he was released on his own recognizance pursuant to Section 1226. Dkt. No. 7-5 at 2. And on the Form I-862, DHS selected the checkbox indicating that he is "a[] [noncitizen] present in the United States who has not been admitted or paroled" and

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 7

not the checkbox designating him "an arriving [noncitizen]." Dkt. No. 7-3 at 2. These facts demonstrate that his detention is governed by 8 U.S.C. § 1226 rather than 8 U.S.C. § 1225.

As noted above, Sanchez does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1226(a) and its implementing regulations, and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). The Court addresses those safeguards below.

      *(b)*     *Procedures Required under 8 U.S.C. § 1226(a)and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following

this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and he is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075-TMC, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it

has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

    2.   Due Process Requirements

As discussed above, Sanchez contends that his Fifth Amendment rights were violated by his re-detention without "written notice and a pre-deprivation hearing before a neutral decisionmaker[.]" Dkt. No. 1 at 10. He alleges that "Respondents revoked [his] release and deprived him of his liberty without affording him any written notice or meaningful opportunity to be heard by a neutral decisionmaker prior to re-detention." *Id.* Respondents' position is that Sanchez faces mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and he was therefore not entitled to a pre-deprivation hearing prior to OREC revocation. Dkt. No. 6 at 8 ("[A] predeprivation hearing would be futile as his detention is based on his mandatory detention.").

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge. Id.* at 1179–80.

*(a)   Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after briefly detaining Sanchez in 2023, DHS released him on his own recognizance. Dkt. No. 7-1 at 4; Dkt. No. 7-4 at 2; Dkt. No. 7-5 at 2. He was living and working in the United States pursuant to a valid work authorization, *see* Dkt. No. 7-6 at 3–4, and spent the vast majority of his years in the United States released on an OREC, Dkt. No. 7-5 at 2; Dkt. No. 7-6 at 3–4. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

*(b)   Procedural Protections*

To determine what procedures are constitutionally sufficient to protect petitioners' liberty

interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Sanchez has a weighty private interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Sanchez has an interest in the in the government adhering to the requirement not to re-detain him absent (1) a revocation made by an appropriate official and (2) a material change in circumstances. This factor favors Sanchez.

Turning to the second factor, Sanchez argues that notice and a hearing are necessary "[t]o protect against arbitrary re-detention and to ensure the right to liberty[.]" Dkt. No. 1 at 7. Indeed, because Respondents purported to detain Sanchez under 8 U.S.C. § 1225(b), he effectively had no opportunity to demonstrate why he should be released on bond. *See* Dkt. No. 6 at 8 ("[A] predeprivation hearing would be futile as [Sanchez's] detention is based on his mandatory detention"; thus, "[a]n analysis of [his] dangerousness or flight risk is not relevant."). "The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 12

of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion." *Escobar Salgado v. Mattos*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *24 (D. Nev. Nov. 17, 2025).

The additional procedures afforded under Section 1226(a), including an individualized custody redetermination by an immigration judge, would substantially mitigate the risk of erroneous deprivation of Sanchez's liberty, because those procedures allow detention only where the petitioner presents a flight risk or danger to the community. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Sanchez could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). This factor weighs in favor of Sanchez.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. "These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Escobar Salgado*, 2025 WL 3205356, at *25. Considering the lapse of time between Sanchez's alleged violations and his arrest,

the nature of those violations, and that Sanchez came to the ICE/ERO location upon request, along with his lack of criminal history, *see* Dkt. No. 7-6 at 3–5, the Court can identify no reason that an individualized hearing would interfere with the government's interests. Therefore, the Court finds that this factor too weighs in favor of Sanchez.

**C.     Remedy**

The specific harm faced by Sanchez is his detention for months without a bond hearing pursuant to Section 1226(a). "The Court finds that harm is remedied by ordering a bond hearing within seven days," and "[g]iven the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioner[] shall be immediately released" on the terms of his most recent OREC. *Escobar Salgado*, 2025 WL 3205356, at *26; *see also Balwan*, 2026 WL 497098, at *8–10 (ordering same); *Martinez Flores v. Kaiser*, No. 1:26-CV-00582-KES-CDB (HC), 2026 WL 482739, at *9 (E.D. Cal. Feb. 20, 2026) (ordering same); *Solano Gallardo v. Warden*, No. 5:26-CV-00485-SSS-BFM, 2026 WL 483207, at *1 (C.D. Cal. Feb. 20, 2026) (ordering same); *Araiza v. Hermosillo*, No. 2:25-CV-02139-TL, 2025 WL 3516103, at *2 (W.D. Wash. Dec. 8, 2025) (ordering same).

Sanchez contends that he is entitled to a bond hearing before an Immigration Judge where "Respondents must prove by clear and convincing evidence that [he] is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks[.]" Dkt. No. 1 at 10–11. But Section 1226(a) is silent as to which party bears the burden of proof or by what standard at a bond hearing. The implementing regulations likewise do not identify who shoulders what burden, simply stating that both parties may present evidence. *See* 8 C.F.R. § 1003.19(d) (2025) ("The determination of the Immigration Judge as to custody status or bond may be based upon any information . . . that is presented to him or her by the [noncitizen] or the Service."). The Supreme Court also has not clarified the burden. *See* Sharon Shaji, Note, *The Due Process Owed to*

*Noncitizens*, 44 Cardozo L.R. 1635, 1638 (2023) ("In the absence of guidance from the Supreme Court, federal circuit courts of appeals have produced a variety of approaches to burden of proof allocation in § 1226(a) bond hearings.").

As the Court discussed in *Balwan*, "[t]he federal appellate courts that have the addressed this question are split" and the Ninth Circuit has not provided an answer directly on point. 2026 WL 497098, at *9. The Court need not address whether as a general matter, a noncitizen detained under Section 1226(a) is entitled to a hearing at which the government is required to prove by clear and convincing evidence that the noncitizen is a danger to the community or a flight risk, because it determines that under the particular and unique circumstances here, *Mathews* requires such a hearing.

**D.    The Court Denies Sanchez 's Request for a Permanent Injunction**

In addition to immediate release, Sanchez requests an order permanently enjoining "his re-detention during the pendency of his removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [he] is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks[.]" Dkt. No. 1 at 10–11. Respondents oppose this request because Sanchez "fails to allege that re-detention is likely to occur without proper notice and an opportunity to be heard." Dkt. No. 6 at 2.

Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 15

violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Nowhere in Sanchez 's petition does he allege that re-detention is likely if he were to be released or that such detention is likely to occur without compliance with the government's regulations or policies. Without argument or evidence that those outcomes are likely to occur, Sanchez's request constitutes nothing more than a "mere possibility" of harm that does not entitle him to relief. *Id.* For these reasons, the Court denies his request for injunctive relief regarding a potential future, post-release re-detention hearing.

### III.    CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1.    Respondents must provide Sanchez with a bond hearing under Section 1226(a) before an immigration judge within seven days of the date of this Order. At the hearing, the government bears the burden of proving by clear and convincing evidence that Sanchez is a danger to the community or a flight risk. Respondents must ensure that the hearing is recorded. Respondents are enjoined from denying bond to Sanchez on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2).

2.    If a bond hearing is not provided within seven days of the date of this Order, Sanchez shall be released from ICE custody immediately on the terms of his most recent OREC or other terms consistent with Section 1226(a). Respondents must file a Status Report with the Court either confirming that Sanchez received a bond hearing—and the results of that hearing—or otherwise confirming his release by April 13, 2026.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 16

3.     If the immigration judge does not order Sanchez released, Respondents are prohibited from transferring Sanchez from this jurisdiction—i.e., the Western District of Washington—for seven days following the immigration judge's decision, unless such transfer is necessary for medical evaluation, medical treatment, release, or extenuating circumstances.

Dated this 2nd day of April, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 17