UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANKLIN ALBERTO SANCHEZ HENAO, <br><br> Petitioner, <br><br> v. <br><br> JULIO HERNANDEZ et al., <br><br> Respondents. | CASE NO. 2:26-cv-00707-LK <br><br> ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY |

This matter comes before the Court on Petitioner Franklin Alberto Sanchez Henao's Motion to Enforce Prior Court Order and for Release from Custody. Dkt. No. 13. For the reasons stated below, the Court grants the motion.

## I.      BACKGROUND

On March 1, 2026, Sanchez filed a petition for writ of habeas corpus in which he asserted that Respondents violated his Fifth Amendment rights by re-detaining him without sufficient due process. *See generally* Dkt. No. 1. He had been released on an Order of Release on Recognizance for over two years, Dkt. No. 10 at 11, and was re-detained without the procedural protections to which he was entitled by statute, *id.* at 12–13. Sanchez was simply "informed that he was being

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 1

taken into custody because of multiple [Alternatives to Detention] ATD violations" and then "transferred to the Northwest ICE Processing Center for detention." Dkt. No. 6 at 3.[1]

On February 4, 2026, this Court granted his petition in relevant part, finding that his re-detention without due process violated the Fifth Amendment. Dkt. No. 10 at 5–14, 16. The records provided to the Court by Respondents did not "clearly indicate how Sanchez violated his ATD terms[.]" *Id.* at 2. And considering "the lapse of time between Sanchez's alleged violations and his arrest, the nature of those violations, and that Sanchez came to the ICE/ERO location upon request, along with his lack of criminal history," the Court concluded that Sanchez was entitled to relief. *Id.* at 13–14.

Because Sanchez was not afforded the procedural protections to which he was entitled by law when he was re-detained, *id.* at 11–13, the Court determined that "under the particular and unique circumstances here," *Mathews* required that Sanchez either be released or receive a bond hearing within seven days at which the government had the burden to demonstrate by clear and convincing evidence that he is a danger to the community or a flight risk, *id.* at 15–16 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The April 2, 2026 Order required Respondents to "ensure that the hearing is recorded," and to "file a Status Report with the Court either confirming that Sanchez received a bond hearing—and the results of that hearing—or otherwise confirming his release[.]" *Id.* at 16.

On April 9, 2026, Sanchez was given a bond hearing before an immigration judge ("IJ"). Dkt. No. 12 at 1. Respondents filed a status report informing the Court that the IJ "found that [the] Department of Homeland [Security] ha[d] shown by clear and convincing evidence that [Sanchez] is a flight risk," and denied conditional release and bond. *Id.*

---

[1] Respondents argued that Sanchez was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) as an applicant for admission. *Id.* at 3–4. The Court disagreed, finding that he was subject to discretionary detention under 8 U.S.C. § 1226(a). Dkt. No. 10 at 7–8.

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY
- 2

On April 10, 2026, Sanchez filed a motion to enforce this Court's prior Order, arguing that he "was provided a bond hearing in name only." Dkt. No. 13 at 1. The Court ordered a briefing schedule on Sanchez's motion and required Respondents to provide the Court with a recording of the bond hearing. Dkt. No. 14. Respondents provided an audio recording, Dkt. No. 17, and filed an opposition to the motion, Dkt. No. 15. Sanchez filed a reply. Dkt. No. 18. The motion is now ripe for review.

## II.    DISCUSSION

In his motion, Sanchez avers that the IJ "failed to meaningfully hold the Respondents to their burden," making "no assessment of facts or evidence," and only "summarily stat[ing] that the government had met its burden without any factual analysis or reasoned decision-making." *Id.* He avers that this "failure to follow this Court's order is a continuation of the due process violation that began when [he] was redetained without a hearing in January." *Id.* at 1–2. He argues that "[t]he appropriate remedy is spelled out in the Order itself: immediate release[.]" *Id.* at 6.

### A.    Jurisdiction

Respondents contend that 8 U.S.C. § 1226(e) precludes the reweighing of evidence Sanchez proposes, but they acknowledge that "the Court still retains habeas jurisdiction over Constitutional claims." Dkt. No. 15 at 3. Sanchez responds that he "does not ask this Court to reweigh evidence or second-guess the Immigration Judge's discretionary bond determination"; rather, he contends that the bond determination did not comply with the Court's order "because the Immigration Judge issued only a conclusory denial without findings or reasoning, and the government presented minimal, uncorroborated evidence." Dkt. No. 18 at 1, 10.

"When a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional (or other federal) rights." *Harvest v. Castro*, 531 F.3d 737, 741 (9th Cir. 2008). Although "courts originally confined habeas relief to orders

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 3

requiring the petitioner's unconditional release from custody," in modern practice "courts employ a conditional order of release in appropriate circumstances, which orders the State to release the petitioner unless the State takes some remedial action[.]" *Id.* at 741. In those instances, "the district court ha[s] authority to review compliance with [the] earlier order conditionally granting habeas relief." *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011)); *see also* Fed. R. Civ. P. 70(a) ("If a judgment requires a party . . . to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done[.]"). And "if a state 'fails to cure the constitutional error, *i.e.*, when it fails to comply with the order's conditions, . . . the conditional grant of habeas corpus *requires* the petitioner's release from custody.'" *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020); *see also Harvest*, 531 F.3d at 744 ("[A] district court can modify its conditional writ even after the time provided in the conditional writ has lapsed" and may "grant the state additional time beyond the period prescribed in a conditional writ to cure a constitutional deficiency." (citation modified)).

In general, the Court does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

However, Section 1226(e) does not "strip federal courts of 'traditional habeas jurisdiction.'" *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* at 782 (quoting *Wilkinson v. Garland*, 601 U.S.

209, 221 (2024)). Similarly, a hearing conducted pursuant to a district court's order requiring the government to be held to a certain legal standard is reviewable for compliance with the court's order. *Id.* at 784. In other words, Section 1226(e) does not bar review of pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id.* at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of discretion. *Id.* at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the IJ "applied the correct legal standard." *Id.* at 785 (internal quotation marks omitted).

Here, the Court ordered that Respondents either (1) conduct a bond hearing in which the government was held to a specific burden within seven days or (2) release Sanchez. Dkt. No. 10 at 16. The Court has jurisdiction to review whether the IJ applied the required standard.

## B.    Exhaustion is not Warranted

Respondents argue that the Court should deny Sanchez's motion because he failed to exhaust his administrative remedies. Dkt. No. 15 at 5–6. Sanchez responds that exhaustion should not be required because (1) the case does not present factual disputes requiring agency expertise to develop a record; (2) he does not seek to bypass the administrative scheme but rather to enforce a court order; and (3) an appeal would frustrate this Court's decree, which required a constitutionally sufficient bond hearing before an IJ within seven days. Dkt. No. 18 at 12–13.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga*

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 5

*v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992), or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

Here, agency expertise is not "necessary to generate a proper record and reach a proper decision" considering that Sanchez disputes Respondent's compliance with this Court's prior order. *Puga*, 488 F.3d at 815. Contrary to Respondent's assertion, the Court is not considering "a disagreement with the weight the IJ afforded certain evidence from DHS," Dkt. No. 15 at 6, but determining whether Respondents effectuated the ordered remedy to the violation of Sanchez's constitutional rights. As to the second *Puga* factor, under these specific facts, there is no evidence that Sanchez seeks to "deliberate[ly] bypass" the administrative process—again, he is seeking enforcement of an Article III court's order. With respect to the third factor, the Court is not persuaded that administrative review is likely to result in Respondents correcting any mistakes given that the precise issue before the Court is whether the Court's order has been effectuated. Furthermore, as the Department of Justice recently stated, after the Attorney General reduced the BIA's size by nearly one half in early 2025, there has been an "unprecedented B[IA] caseload." 91 Fed. Reg. 5267-01, 5270 (Feb. 6, 2026). Indeed, "between fiscal year 2015 and the end of fiscal year 2025, the B[IA]'s pending case load increased more than five-fold—from 37,285 pending appeals to 202,946 pending appeals," leaving the BIA "at a point where, even were it to have additional resources and better management, . . . it would not be able to keep up with incoming

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 6

filings while tackling the backlog in any meaningful way." *Id.* (citing Executive Office of Immigration Review ("EOIR"), Adjudication Statistics: All Appeals Filed, Completed, and Pending (Nov. 18, 2025), https://www.justice.gov/eoir/media/1344986/dl?inline [https://perma.cc/88C5-MU4N]). Thus, "the B[IA] largely functions now as simply a vessel for further delay of the eventual resolution of [a noncitizen's] case." *Id.* at 5271. Forcing Sanchez to wait for an appeal when he was supposed to have received a legally sufficient hearing within seven days of the Court's initial order would frustrate the expediency required by that order.

Under these circumstances, where the Court previously granted Sanchez's habeas petition and ordered the relief that he now seeks to enforce, exhaustion is not required. *See Quiroz Zacarias v. Mullin et al*, No. 1:26-cv-00574-WJM, Dkt. No. 25 at 8 (D. Colo. Apr. 22, 2026) ("[T]he Government's suggestion that [Petitioner] can present his due process argument before this Court *after* appealing to the BIA rings hollow" considering that "[t]he BIA typically takes several months to issue decisions on detained noncitizens' appeals."); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237–38 (W.D.N.Y. 2019) (excusing exhaustion because (1) petitioner sought to enforce the court's order issued pursuant to the Due Process Clause and the BIA does not have jurisdiction to adjudicate constitutional issues; and (2) due to "delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent").

C.    **Enforcement of Order Conditionally Granting the Writ**

The Court now considers the limited question of whether Respondents complied with the Court's order requiring them to "provide Sanchez with a bond hearing under Section 1226(a) before an immigration judge within seven days of the date of this Order" where "the government bears the burden of proving by clear and convincing evidence that Sanchez is a danger to the community or a flight risk." Dkt. No. 10 at 16.

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 7

As noted above, Sanchez argues that the IJ's decision failed to comply with the Court's order because he "made no assessment of facts or evidence and summarily stated that the government had met its burden without any factual analysis or reasoned decision-making." Dkt. No. 13 at 1. Respondents aver that "[t]he record provides a rational basis for the IJ to find that DHS met its burden" considering that "the IJ repeatedly explained that the Government bore the burden to prove by clear and convincing evidence that Petitioner's detention was justified," "accepted evidence from both parties, listened to their arguments, and allowed legal counsel to raise any issues." Dkt. No. 15 at 7.

There is no dispute that the IJ explained that it was the government's burden to show by clear and convincing evidence that Sanchez was flight risk or danger. Dkt. No. 13 at 3; Dkt. No. 15 at 7. But, as during the initial habeas proceedings before this Court, the Government put forth no evidence at the bond hearing indicating how Sanchez violated his ATD terms—the purported basis for his re-detention. *See generally* Dkt. Nos. 10, 13-1, 17. The Government's only evidence of the purported ATD violations at the bond hearing was the same I-213 "Record of Deportable/Inadmissible Alien" submitted by Respondents in the underlying habeas proceeding. *Compare* Dkt. No. 13-1 at 4–7 (Government's evidence at the bond hearing) *with* Dkt. No. 7-6 at 2–5 (Respondent's submission in underlying habeas proceeding).[2] As the Court stated during the habeas proceeding, this document "does not clearly indicate how Sanchez violated his ATD terms[.]" Dkt. No. 10 at 2. And the Government provided no further explanation at the bond hearing, stating only that Sanchez "is an extreme flight risk" because "[h]e has an order of removal pending appeal" and "has three ATD violations in . . . . April 2025, July 2025, and August 2025." Dkt. No. 17 at 2:00–3:02. Sanchez's counsel argued that "in the habeas proceedings and here, the

---

[2] The version submitted at the bond hearing contained only a digital signature from Deportation Officer Lindvall, *see* Dkt. No. 13-1 at 4–7, whereas the version submitted to this Court this Court contained a wet signature of Deportation Officer Lindvall, *see* Dkt. No. 7-6 at 2–5.

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 8

Government's had a chance to submit proof or evidence and they haven't done so . . . I believe the allegation is that he failed to upload his photo in the ISAP [(Intensive Supervision Appearance Program)] app on time although again it doesn't actually say that that's the violation[.]" Dkt. No. 17 at 3:03–3:33. He reiterated that Sanchez

> always complied with uploading his photo, and to the extent that there was ever a glitch or an error or an issue with the app, the app has a communication function where you can message the ICE app officer . . . all those communications are in the app and once [a petitioner is] redetained they no longer have access to the app . . . the Government maintains all those records, those communications about the uploads and things like that, and they still haven't provided any evidence and again it's their burden.

*Id.* at 3:38–4:18. The IJ then elicited additional information from Sanchez's counsel relating to Sanchez's family ties, employment history, and immigration history. *Id.* at 4:19–10:30.[3] When given the final word, the Government asserted that Sanchez "does not have sufficient ties as the Court has questioned, there is no family with status and insufficient ties, along with the order of removal, and the ATD violations." *Id.* at 10:30–10:57. Without explaining his reasoning whatsoever, the IJ stated, "I'm gonna find the Department's met its burden to show by clear and convincing evidence the Respondent is a flight risk, I'm denying bond[.]" *Id.* at 10:57–11:02. That decision was then translated for Sanchez. When asked by Sanchez's counsel to summarize the reasons for the denial, the IJ simply repeated that the Department had shown by clear and convincing evidence that Sanchez is a flight risk. *Id.* at 11:38–11:45.

---

[3] To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 9

According to the Supreme Court, the clear and convincing standard is met by proving that a factual contention is "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).[4] Although an immigration judge need not discuss each piece of evidence submitted, "where there is any indication that the [immigration court] did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand." *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011). In the context of motions to reopen, the Ninth Circuit has held that "the BIA abuses its discretion when it fails to 'consider and address in its entirety the evidence submitted by a petitioner' and to 'issue a decision that fully explains [its reasoning.]'" *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (quoting *Mohammed v. Gonzales*, 400 F.3d 785, 792–93 (9th Cir. 2005)). "In this same vein, many district courts have recently concluded that an immigration judge abuses their discretion when they deny release on bond without any explanation of their reasoning in doing so." *Singh v. Warden, Golden State Annex Detention Facility*, No. 1:26-CV-01973-DAD-CSK, 2026 WL 1328588, at *6 (E.D. Cal. May 13, 2026) (collecting cases); *see also Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("In a fundamentally fair bond hearing," due process mandates that a noncitizen "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests."). Indeed, "[a]n agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision." *Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016). Here, because bond was

---

[4] Likewise, the BIA has defined the standard as "that degree of proof though not necessarily conclusive, which will produce in the mind of the court a firm belief or conviction, or as that degree of proof which is more than a preponderance but less than beyond a reasonable doubt." *Matter of Patel*, 19 I&N Dec. 774, 783 (BIA 1998) (quoting *Matter of Carrubba*, 11 I&N Dec. 914, 917 (BIA 1966)).

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 10

denied "without any explanation of the evidence considered or the reasoning supporting the conclusion that petitioner posed a flight risk, this court is compelled to find that the immigration judge abused h[is] discretion by failing to properly apply the clear and convincing standard." *Singh v. Warden*, 2026 WL 1328588, at *6.

Although "[t]he Federal Rules of Evidence do not apply strictly in immigration removal proceedings," *Singh v. Holder*, 638 F.3d at 1209, and "a Form I–213 is presumptively reliable and can be admitted in deportation proceedings without giving the [noncitizen] the opportunity to cross-examine the document's author, at least when the [noncitizen] has put forth no evidence to contradict or impeach the statements in the report," *Felzcerek v. I.N.S.*, 75 F.3d 112, 117 (2d Cir. 1996), the circumstances of these proceedings, including deficiencies in the I-213 form, required more. First, this Court specifically stated in its prior order that the record did not "indicate how Sanchez violated his ATD terms" because the I-213 Form states only that Sanchez "committed an ATD violation" on three occasions without indicating what the violations were. Dkt. No. 10 at 2, 3–14. The government made no attempt to supply, and IJ made no attempt to verify, the nature of the alleged ATD violations, and absent such crucial information, it is impossible to tell whether the violations are probative of flight risk.

Second, the I-213 form is deficient in other respects. It reflects hearsay upon hearsay— "ATD violations are documented by BI" (Respondents never explain what "BI" is or how it documents the violations), "[v]iolations are recorded" (the government does not explain by whom or how), and the information "is then updated in the EARM ERO database" (again, the government does not explain by whom or how). Dkt. No. 8 at 2. In this case, DHS failed to accurately transcribe the database information into the I-213 form: as the Court noted, "[t]he declaration of Deportation Officer Sheldon Benjamin states that Sanchez also had an ATD violation on October 29, 2024, Dkt. No. 8 at 2, but that is not reflected in the accompanying DHS records, Dkt. No. 7-6 at 5, and

Respondents state that 'ICE inadvertently overlooked one of the ATD violations when the database was reviewed[.]'" Dkt. No. 10 at 2 (quoting Dkt. No. 6 at 3 n.3). Thus, even if the form contained sufficient information to ascertain that the ATD violations made Sanchez a flight risk (it does not), the accuracy of the form is suspect, and despite being the sole possessor of the underlying "database" information, the government failed to provide it to corroborate the data in the form. *Cf. Torres-Ramos v. Mukasey*, 258 F. App'x 991, 993 (9th Cir. 2007) (an unauthenticated I–213 form bearing an INS agent's unsupported representation that petitioner had been convicted of an alleged offense did not constitute "clear, unequivocal, and convincing evidence" of the conviction); *Espana v. Nessinger*, No. 26-CV-014-JJM-PAS, 2026 WL 821788, at *12–13 (D.R.I. Mar. 25, 2026) ("That DHS could not be bothered to introduce evidence to substantiate [its] allegation . . . is baffling considering that the agency claims in the I-213 to be in possession of such evidence. . . . An unreliable, uncorroborated I-213 form simply cannot, by itself, serve as clear and convincing evidence sufficient for a finding of dangerousness.").

In sum, the uncorroborated, inaccurate I-213 form—which contained information input by an unknown person in an unknown (but deficient) manner, drawn from an unidentified database that culled information from an unknown source—which cited only unspecified "violations" cannot serve as clear and convincing evidence for a finding of flight risk. *See Rodriguez-Casillas v. Lynch*, 618 F. App'x 448, 454 (10th Cir. 2015) (factors that "may render a Form I–213 problematic" include information recorded therein that "was obtained by someone other than the [noncitizen] himself," that "is known to be incorrect," that was "drafted carelessly," or is otherwise suspicious (citation modified)); *Murphy v. INS,* 54 F.3d 605, 610–11 (9th Cir. 1995) (an unauthenticated I–213 was due little evidentiary weight because it provided hearsay from an individual other than the noncitizen, was recorded well after the information was gathered, and contained unexplained alterations); *Cunanan v. INS,* 856 F.2d 1373, 1374–75 (9th Cir. 1988)

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 12

(vacating BIA determination premised upon uncorroborated affidavit of absent witness and Form I–213 reporting substance of interview of the witness by an INS officer); *see also* Fed. R. Evid. 803(8) (public records are admissible unless "the source of information" or other circumstances "indicate a lack of trustworthiness"); *cf. Singh v. Holder*, 638 F.3d at 1209 (IJ's admission of unauthenticated RAP sheet was permissible because there was "no indication that any of the information in the RAP sheet [wa]s false, or that Singh could have provided a mitigating explanation for any of the incidents").

Nor can a removal order alone serve as clear and convincing evidence for a finding of flight risk, even where relief from removal is unlikely. "[T]he fact of a removal order is not sufficient by itself to deny bond" or establish flight risk. *Tavurov v. Noem*, No. 2:26-CV-00668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026); *see also Singh v. Holder*, 638 F.3d at 1205 (a final removal order "alone does not constitute clear and convincing evidence that [a noncitizen] presented a flight risk justifying denial of bond"); *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *8 (C.D. Cal. Apr. 15, 2026) (noting that the fact that a noncitizen has unresolved claims for immigration relief "does not mean [the] noncitizen cannot be trusted to appear for future court proceedings on that basis alone").

And with respect to the issue of Sanchez's ties to the United States, the IJ left that issue (as with all the relevant issues) wholly unaddressed in his conclusory finding that the government had met its burden. He did not indicate how he weighed Sanchez's ties (or lack thereof) to the United States, Sanchez's and his family's 2.5 years in this country, their asylum applications, or Sanchez's and his wife's work history in his analysis of flight risk. "The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors," and therefore "must conclude that the immigration judge failed to do so[.]" *Vasquez Lopez v. Hernandez*, No. C26-0775-TSZ, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026).

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 13

For all these reasons, the Court concludes that the bond hearing did not remedy the constitutional violation established in the underlying habeas action. "[T]here is a clear 'red flag' in that the immigration judge failed to cite any evidence or provide any reasoning for h[is] decision." *Singh v. Warden*, 2026 WL 1328588, at *7 (quoting *Martinez*, 124 F.4th at 785). Because the government's evidence could not, as a matter of law, establish clearly and convincingly that Sanchez poses a flight risk, the IJ did not apply the correct burden of proof. *See W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (bond denial was "constitutionally deficient, because there are no circumstances in which the IJ could plausibly establish that Petitioner posed a flight risk"). Because Respondents did not provide a constitutionally sufficient bond hearing within seven days as ordered by the Court, "Sanchez shall be released from ICE custody immediately on the terms of his most recent OREC or other terms consistent with Section 1226(a)." Dkt. No. 10 at 16; *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *8 (D.N.J. Mar. 23, 2026) ("Respondents have now violated Petitioner's due process rights twice: first when they initially detained him unlawfully under § 1225(b), and then again when they deprived him of a constitutionally adequate bond hearing," so "the only just remedy in these circumstances is immediate release."); *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *10 (C.D. Cal. Mar. 5, 2026) ("Given Miri's inadequate bond hearing, Miri's continued detention fails to comply with his constitutional due process rights."); *Enoh v. Sessions*, No. 16-CV-85(LJV), 2017 WL 2080278, at *10 (W.D.N.Y. May 15, 2017) (finding that release was the appropriate remedy where "after th[e] Court ordered that [Petitioner] receive a . . . bond hearing, the respondents failed to submit or proffer anything that could possibly

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY
- 14

meet their burden of establishing risk of flight or danger to the community by clear and convincing evidence.").

### III.   CONCLUSION

For the foregoing reasons, the motion to enforce is GRANTED. Respondents shall immediately release Sanchez from custody subject to the conditions of his OREC or other terms consistent with Section 1226(a). The parties shall file a Joint Status Report by May 29, 2026, confirming that Sanchez has been released.

The Court notes that it will not award fees to Sanchez for his motion or the reply brief. These filings were almost entirely devoid of citations to legal authority or to the record, violating Local Civil Rules 7(b)(1) and 10(e)(6). The Court will not entertain this type of unsupported briefing in the future.

Dated this 28th day of May, 2026.

Lauren King
United States District Judge

ORDER GRANTING MOTION TO ENFORCE PRIOR COURT ORDER AND FOR RELEASE FROM CUSTODY - 15